SENECA NATION OF INDIANS *v.* HUGABOOM.

*(Supreme Court, General Term, Fifth Department.* April 11, 1890.)

BOUNDARIES—PROVINCE OF JURY.

On an issue as to the location of a boundary line, it was shown that an ancient survey called for a line "thence west 482 chains 31 links to a post." A surveyor

testified that within a short time before the action the monuments called for by the survey were in existence, and indicated the line to be where it had been supposed to be for 90 years, but which was not a direct line, as in the language quoted. *Held*, that whether the line was indicated by monuments was a question for the jury.

Appeal from circuit court, Cattaraugus county.

Action by the Seneca Nation of Indians against Wellington Hugaboom. There was a verdict and judgment for defendant, and plaintiff appeals.

Argued before DWIGHT, P. J., and MACOMBER and CORLETT, JJ.

*Hudson Ansley*, for appellant. *W. S. Thrasher*, for respondent.

MACOMBER, J. The action is ejectment to recover certain premises in Perrysburgh, Cattaraugus county, in this state, which, the plaintiff claims, lies within the boundaries of the Cattaraugus Indian reservation. By the treaty of 1802, the plaintiff became the owner of a certain tract of land known as the "Cattaraugus Reservation," the true southern line of which is put in dispute by this action. Up to 1802 there had been no defined and well-ascertained boundaries given to the reservation by any treaty. At this time, however, a complete description was given thereof, one line of which was extended as follows: "Thence west 482 chains 31 links to a post." The plaintiff's claim rests mainly upon the contention that, if a survey is made according to this treaty, the same will include the piece of land in dispute. The government ordered, it is true, a new survey of this reservation in the year 1878, but we do not conceive that such new survey could be effective in adding to the reservation any lands which did not belong to the tribe by virtue of the treaty made by the government with the Indians in 1802. The question, therefore, before the jury, was whether this line quoted above was the true one, and whether it must be relied upon, irrespective of any monuments there referred to. The argument in behalf of the plaintiff is that the monuments have been obliterated, and that there remains no evidence of the true boundaries save the line as projected by the survey made in 1798, and which was adopted by the treaty of 1802. To meet this position of the plaintiff, the witness Benjamin R. Train, a surveyor, was called, whose evidence is quite voluminous. It is to the general import that there were evidences, even a short time before the trial of the action, that the monuments described in the survey still existed, and that they indicated the line to be where it has been supposed to be for 90 years which would give the land to the defendant. This witness admits that the line which he has traced out is not a direct line, such as is mentioned in the treaty; but it is claimed, as a result of his evidence, that it is shown that the survey for this reservation so made in 1798 did not proceed upon a straight line, and that the monuments which were named in the courses must control, and not the courses themselves. On the whole, we think that this testimony made a case for the consideration of the jury, and that their verdict ought not to be disturbed, as it has direct evidence to support it, and the tacit support of three generations of men. The judgment and order should be affirmed. All concur.